## IN THE COURT OF APPEALS OF IOWA

No. 25-1256
Filed December 3, 2025

IN THE INTEREST OF Z.K. and I.W.,
Minor Children,

L.S.-R., Mother,
        Appellant.
_____

Appeal from the Iowa District Court for Webster County, Joseph McCarville, Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Brandy Lundy, Moorland, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee.

Ricki Osborn Stubbs of Osborn Stubbs Law Office P.C., Fort Dodge, attorney and guardian ad litem for minor children.

Considered without oral argument by Badding, P.J., Sandy, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025) .

**BOWER, Senior Judge.**

Following a mother's lengthy history of substance use and failed drug tests, the district court terminated her parental rights to two of her children,[1] born in 2019 and 2023.[2] On appeal, the mother challenges the statutory grounds authorizing termination, claims the Iowa Department of Health and Human Services failed to make reasonable efforts toward reunification, argues a permissive exception should be applied, and maintains her right to counsel was violated due to the "current statutory court-appointed hourly rate." We affirm.

## I. Standard of Review and Applicable Law

We review termination orders de novo. *In re J.V.*, 13 N.W.3d 595, 603 (Iowa 2024). We are not bound by the district court's factual findings, but we give them weight, especially in assessing witness credibility. *Id.* Our review follows a three-step process to determine if a statutory ground for termination has been satisfied, whether termination is in the children's best interests, and whether any permissive exception should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). We do not address steps not challenged by the parent. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). After addressing any challenged steps, we then consider any additional claims raised. *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025).

---

[1] The mother's two older children are in the sole legal custody of their father. As the mother explained, the court ordered legal custody of the children with their father during the parents' divorce proceeding because she "was on drugs at the time" and she "had no stable home." In addition, a no-contact order was issued against the mother naming the children's father as the protected party.

[2] At the time the termination order was entered relating to the mother, the parental rights of I.W.'s father and Z.K.'s father were not terminated.

## II.     Grounds for Termination

The court found the statutory grounds for termination satisfied under Iowa Code section 232.116(1)(f) (2025) as to Z.K. and section 232.116(1)(h) as to I.W. These two grounds require the child to be previously adjudicated in need of assistance and for the court to find the child cannot be returned to the parent's custody at the time of the termination hearing.  Iowa Code § 232.116(1)(f), (h). They differ only with respect to the age of the child at issue and the length of time the child must be removed from the parent's custody.  *Compare id.* § 232.116(1)(f), *with id.* § 232.116(1)(h).

Under these grounds, the mother only challenges whether the children could be safely returned to "the custody of the child's parents" at the time of the termination hearing.  *See id.* § 232.116(1)(f)(4), (h)(4); *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (noting "at the present time" means at the time of the termination hearing).  According to the mother, because I.W. "has been returned" to her father and Z.K. "will likely return" to his father, the State is "unable to meet [its] burden" under section 232.116(1)(f)(4) and (h)(4).  We reject this contention.  "Parents" as used in the statute includes "parent," *see In re R.M.-V.*, 13 N.W.3d 620, 625 (Iowa Ct. App. 2024), and in this regard, implicates the court's findings relating to the mother, which she does not otherwise contest.

To further support her claim, however, the mother contends the department failed to make reasonable efforts toward reunification.  "While not a strict substantive requirement for termination, the State must show reasonable efforts toward reunification as part of its ultimate proof that the children cannot be safely returned to the custody of a parent." *In re C.M.*, No. 25-0435, 2025 WL 1706340,

at *2 (Iowa Ct. App. June 18, 2025) (cleaned up).  The mother raises the following complaints.[3]

First, she claims the department failed to give her a hair stat test despite a court order, thwarting her an opportunity to prove her sobriety.  To be clear, the mother maintained her sobriety date was August 4, 2024.  She requested a hair stat test after she repeatedly tested positive on sweat patch and urine tests after that date.  The court acknowledged the department had not obliged the mother's request for a hair stat test "due to how their system works and the mother's positive sweat patch."  Nonetheless, in March 2025, the court entered an order stating the department "is authorized to [do] a hair stat test on the . . . mother."

At the termination hearing, the caseworker acknowledged the hair stat test had not yet been completed, explaining, "I am not able to enter the hair stat test into the system when there is a positive test before that.  There has to be a period of time with negative testing, without a positive test, before I can enter a hair stat test," even when there is a court order.  The caseworker further testified, since the permanency hearing in April, the mother had completed two sweat patch tests, both of which were positive.  Yet the mother was "adamant that all of these times with the positive drug tests, they were just positive but [she] never relapsed."  She believed a hair stat test would have given her an opportunity to demonstrate sobriety.  Under these circumstances, although it is concerning the department did

---

[3] In addition to the claims set forth below, the mother also argues the department's "contract" with family support services (FSS) providers "is a prima facie violation of the requirement to use reasonable efforts."  But this issue was neither raised before nor decided by the district court, so it is not preserved for review. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("[I]ssues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

not complete a hair stat test, the mother had opportunities to test through both urine and sweat patches. *See id*. at *3. However, "the mother could not demonstrate any meaningful period of sobriety because her sweat-patch results consistently came back positive for methamphetamine." *Id*.

Next, the mother claims the department failed to inform her of the children's "medical procedures and obtain[] informed consent." Specifically, Z.K. was overdue for dental work, which included fillings for several cavities and repair to his lower teeth for "trauma" that "had never been taken care of." The caseworker testified an appointment was scheduled, but "[t]he dentist ended up calling sooner" with a "last minute cancellation" that same day; the mother learned about the schedule change later that day, after the procedure was underway. And I.W. had several ear infections so an appointment was scheduled with an ear, nose, and throat (ENT) specialist to have tubes put in her ears. The department learned within twenty-four hours the time the procedure was to be performed. The caseworker testified, "I communicated when the ENT appointment was and said that we do not know a specific time yet because we will know the time the day before." She stated the mother was informed of other appointments.

The mother also challenges the department's "fail[ure] to increase visitation." However, under this record, the obvious hurdle to the mother's reunification with the children was her methamphetamine use, not her interactions with the children. The mother continued to deny using substances, despite positive drug tests. She claimed, "supposedly they were positive," maintaining the tests produced a false positive. However, "[g]iven the volume of positive tests," we are not persuaded "this is not an instance of an outlier false positive." *Id.* at *2. Upon

our review, we reject the mother's reasonable efforts challenges and conclude the State established a statutory ground for termination.

## III.     Permissive Exceptions

Next, the mother points to potential permissive statutory exceptions to preclude termination. She claims her parental rights should not be terminated because Z.K.'s father "may very well end up with custody of Z.K." and I.W.'s father currently "has" I.W. in his care. *See* Iowa Code § 232.116(3)(a) (allowing the court to forgo termination when "[a] relative has legal custody of the child"). However, at the time of termination, the children were in the legal custody of the department and placed with a foster family, so section 232.116(3)(a) does not apply. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

The mother further claims the court "failed to address the bond of the children with the mother and the potential detrimental effects of severing that bond." *See* Iowa Code § 232.116(3)(c) (allowing the court not to terminate when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). It is the mother's burden to prove the exception should be applied, and we are not persuaded this is such a case. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). The mother has shown through her conduct over more than three years that she cannot be trusted to safely parent the children. Indeed, this case has been ongoing the majority of Z.K.'s life and all of I.W.'s life. These children need and deserve stability and permanency. We decline to apply this permissive exception to preserve the legal bond between the mother and children.

**IV.     Disposition**

Having addressed the claims properly before us on appeal,[4] we affirm the termination of the mother's parental rights.

**AFFIRMED.**

---

[4] The mother also claims her right to counsel was violated due to the "current statutory court-appointed hourly rate." Because this issue was neither raised before nor addressed by the district court, it is not preserved for review. *See Meier*, 641 N.W.2d at 537.